UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

AIDS SERVICE CENTER OF LOWER
MANHATTAN, INC. d/b/a AIDS SERVICE
CENTER NYC,

                **Plaintiff,**

  - against -

PHARMBLUE LLC,

                **Defendant.**

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/14

**OPINION AND ORDER**

**14-cv-2792 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

       AIDS Service Center of Lower Manhattan, Inc., doing business as AIDS Service Center NYC ("ASCNYC"), brings this diversity action against PharmBlue LLC ("PharmBlue") for multiple causes of action, including: (1) fraudulent inducement; (2) negligent misrepresentation; (3) breach of contract; (4) breach of implied covenant of good faith; and (5) unjust enrichment.  PharmBlue now moves to dismiss under the first-filed-case rule or, in the alternative, transfer venue to the United States District Court for the Western District of Pennsylvania. For the following reasons, PharmBlue's motion is DENIED in its entirety.

## II.   BACKGROUND[1]

ASCNYC is a New York non-profit organization with its principal office in New York City.[2]  ASCNYC provides comprehensive social and medical case management services to New York City's HIV/AIDS community, including assisting its clients in obtaining necessary medications.[3]  PharmBlue is a Delaware limited liability company with its principal place of business in Pennsylvania.[4]  In April 2013, ASCNYC and PharmBlue entered into a Pharmacy Services Agreement (the "Agreement"),[5] under which PharmBlue agreed to act as ASCNYC's designated "contract pharmacy" to dispense medications to its clients for purposes of the 340B Program ("the exclusivity provision").[6]  PharmBlue's

---

[1]     The facts below are taken from the Complaint ("Compl."), unless otherwise indicated.

[2]     *See* Compl. ¶ 7.

[3]     *See id.* ¶¶ 1-2.  *See also* 5/30/14 Declaration of Sharen I. Duke, Executive Director and Chief Executive Officer ("CEO") of ASCNYC, in Opposition to Defendant's Motion to Dismiss or in the Alternative to Transfer Venue ("Duke Decl.") ¶ 2.

[4]     *See* Compl. ¶ 8.

[5]     The Agreement is governed by New York law.  *See id.* ¶ 14.

[6]     Section 340B of the Veterans Health Care Act of 1992, 42 U.S.C. § 256, is a drug pricing program through which prescription drug manufacturers can offer HIV/AIDS drugs at discounted prices to certain purchasers, as defined by the Covered Entities statute, that are registered and approved by the Health Resources and Services Administration ("HRSA").  *See* Compl. ¶¶ 11-13.

duties included providing Eligible Patients, as defined in the Agreement, with Pharmacy Services, including "dispens[ing] Covered Drugs to Eligible Patients in accordance with all applicable State and Federal statutes and regulations."[7]  Under the Agreement, "[b]ased on prescriptions from their doctors, ASCNYC would order medication for 340B Program-enrolled clients at discounted prices and have the drugs shipped directly to PharmBlue, which would dispense the drugs to ASCNYC's clients."[8]  PharmBlue would then seek reimbursement for the full cost of the drugs from the clients' insurance providers and retain a portion of the Reimbursement Differential Funds as its fee.[9]  ASCNYC would receive the remaining portion to fund its various HIV/AIDS programs.[10]

Many of ASCNY's clients receive prescribed medications through New York's Medicaid insurance programs.[11]  ASCNYC alleges that beginning

---

[7]    *Id.* ¶ 21.  *See also* 5/19/14 Declaration of Dianna C. Wyrick, defendant's counsel, in Support of Defendant's Motion to Dismiss or in the Alternative to Transfer Venue ("Wyrick Decl."); 4/9/13 Pharmacy Services Agreement, Ex. 1 to Wyrick Decl., at 4.

[8]    Compl. ¶ 18.

[9]    *See id.*  Reimbursement Differential Funds is the difference between the discounted cost of the medications and the amount reimbursed by the insurance company.  *See also id.* ¶ 15.

[10]    *See id.*  ¶ 18.

[11]    *See id.* ¶ 19.

3

with the execution of the Agreement and through the present, PharmBlue has failed to dispense Covered Drugs to ASCNYC's Medicaid-eligible clients because it lacks the required New York Medicaid licensure.[12]  ASCNYC further alleges that PharmBlue made material misrepresentations in the Agreement regarding its Medicaid licensure and ability to lawfully provide Pharmacy Services to ASCNYC's Medicaid-eligible clients, on which ASCNYC relied to its detriment.[13] Specifically, ASCNYC alleges that PharmBlue deprived it of the benefits of the Agreement by preventing ASCNYC from obtaining 340B Program funds.[14]

On January 21, 2014, ASCNYC asked PharmBlue to amend the Agreement to eliminate the exclusivity provision.  ASCNYC wanted to contract with a pharmacy with a New York Medicaid license in order to service its Medicaid-eligible clients.[15]  PharmBlue rejected this request.[16]  On March 6, 2014, Michael Nelson, CEO of PharmBlue, informed Sharen Duke, CEO and Executive

---

[12]      *See id.* ¶ 23.

[13]      *See id.* ¶ 24.  PharmBlue states that the Agreement does not require it to have a Medicaid license, but it made efforts to obtain one in order to accommodate ASCNYC.  *See* Memorandum of Law in Support of Defendant's Motion to Dismiss or in the Alternative to Transfer Venue ("PharmBlue Mem."), at 4.

[14]      *See* Duke Decl. ¶ 7.

[15]      *See* Compl. ¶ 41.

[16]      *See id.*

4

Director of ASCNYC, that PharmBlue had obtained its Medicaid license.[17]

ASCNYC alleges that this information was also false.[18]  On March 14, 2014,

ASCNYC provided PharmBlue with a Notice of Termination of the Agreement

due to its continuing failure to render Pharmacy Services to Medicaid-eligible

clients under the Agreement.[19]  The Notice of Termination informed PharmBlue

that ASCNYC would "continue to utilize PharmBlue's services for non-Medicaid

eligible patients" for the next ninety days, but "intend[ed] during this 90-day

period to contract with a properly licensed New York Provider" for its Medicaid-

eligible patients.[20]  It further informed PharmBlue that ASCNYC "intend[ed] to

pursue a claim for all the damages it has sustained as a result of PharmBlue's

material breaches."[21]  On March 19, 2014, PharmBlue's attorney, Dianne Wyrick,

responded to ASCNYC asserting that PharmBlue had not materially breached the

Agreement and that even if it had, PharmBlue had ninety days from the date of the

---

[17]     *See id*. ¶ 42.

[18]     *See id*. ¶ 43.

[19]     *See id*. ¶ 44.  *See also* 3/14/14 Letter from Joseph Saltarelli, plaintiff's
counsel, to Matthew Mohn, defendant's counsel ("3/14/14 Saltarelli Letter"), Ex. 2
to Wyrick Decl., at 2; 3/14/14 Notice of Termination of the Pharmacy Services
Agreement ("Notice of Termination"), Ex. 2 to Wyrick Decl.

[20]     3/14/14 Saltarelli Letter at 2.

[21]     *Id*.

Notice of Termination to cure any alleged material breach before the Agreement could be terminated.[22]  Wyrick also disclosed that on February 28, 2014, PharmBlue had acquired a pharmacy in Brooklyn, New York with a Medicaid license that could provide the Pharmacy Services to ASCNYC, thereby curing the alleged breach of the Agreement.[23]  In light of that development, PharmBlue asked ASCNYC to withdraw the Notice of Termination so PharmBlue and ASCNYC could continue their business relationship "without the threat of litigation."[24]  On March 31, 2014, ASCNYC's counsel, Joseph Saltarelli, responded that ASCNYC would not withdraw the Notice of Termination or waive its claim for damages.[25]  However, ASCNYC would agree to meet with PharmBlue, in the interests of avoiding litigation, to address a mutually agreeable termination of the Agreement and appropriate compensation for ASCNYC's losses.[26]  In subsequent telephone conversations with Wyrick on April 4 and April 9, 2014, ASCNYC reiterated that

---

[22]     *See* 3/19/14 Letter from Dianne Wyrick to Joseph Saltarelli ("3/19/14 Wyrick Letter"), Ex. 3 to Wyrick Decl., at 1.

[23]     *See id*. at 2.

[24]     *Id*.

[25]     *See* 3/31/14 Letter from Joseph Saltarelli to Dianne Wyrick ("3/31/14 Saltarelli Letter"), Ex. 4 to Wyrick Decl., at 3.

[26]     *See id*. at 4.

6

it would not withdraw the Notice of Termination.[27]

On April 9, 2014, Saltarelli informed Wyrick that ASCNYC was prepared to litigate if the parties could not reach a settlement, and thereafter updated Duke on this conversation.[28]  The next day, at 12:17 p.m., Wyrick emailed Saltarelli a copy of the complaint and motion for preliminary injunction that PharmBlue had filed in the Allegheny Court of Common Pleas (the "Pennsylvania Action").  ASCNYC was served immediately thereafter.[29]

PharmBlue states that it based its April 10, 2014 filing on its discovery that ASCNYC had entered into a January 2014 contract with another pharmacy, Town Total Health, LLC ("Town Total"), in violation of the exclusivity provision of the Agreement.[30]  PharmBlue learned of the Town Total contract from a publication on the HRSA website.[31]  On April 15, 2014, PharmBlue amended its

---

[27]     *See* Wyrick Decl. ¶ 10.

[28]     *See* 5/29/14 Declaration of Joseph J. Saltarelli in Opposition to Defendant's Motion to Dismiss or in the Alternative to Transfer Venue ("Saltarelli Decl.") ¶¶ 6-7.  *See also* 4/9/14 Email from Saltarelli to Duke, Ex. C to Saltarelli Decl., at 1.

[29]     *See* Saltarelli Decl. ¶ 9.

[30]     *See* Wyrick Decl. ¶ 11.

[31]     *See id*. ¶ 12.  *See also* 4/9/14 HRSA Printouts, Ex. 5 to Wyrick Decl.

complaint to add Town Total as a defendant.[32]  The judge in the Pennsylvania Action held a status conference on April 21, 2014, ordered expedited discovery, and set hearings for ASCNYC's expected objections to personal jurisdiction (June 11, 2014) and PharmBlue's motion for preliminary injunction (June 12, 2014).[33]

ASCNYC filed the instant action on April 18, 2014, seeking rescission of the Agreement and asserting claims for damages.[34]  On April 30, 2014, ASCNYC removed the Pennsylvania Action to the United States District Court for the Western District of Pennsylvania,[35] and then moved to dismiss the case for lack of personal jurisdiction, transfer the case to this Court, and/or stay discovery.[36]  On May 2, 2014, a telephone status conference was held in the Pennsylvania Action and an expedited briefing schedule for various procedural motions was set.[37]  Those motions were all filed on May 12, 2014 and were fully

---

[32]     *See* Wyrick Decl. ¶ 15.  *See also* 4/10/14 Verified Amended Complaint, Ex. 6 to Wyrick Decl.

[33]     *See* Wyrick Decl. ¶¶ 17-18.  *See also* 4/22/14 and 4/28/14 Court Orders, Ex. 7 to Wyrick Decl.

[34]     *See* Duke Decl. ¶ 8.

[35]     *See* Wyrick Decl. ¶ 19.

[36]     *See id*. ¶ 20.

[37]     *See id*.

briefed as of May 23, 2014.[38]

## III.   MOTION TO TRANSFER PURSUANT TO FIRST-FILED RULE

Under the first-filed rule, "[w]here there are two competing lawsuits, the first suit should have priority."[39]  The rule "embodies considerations of judicial administration and conservation of resources."[40]  It applies "where proceedings involving the same parties and issues are pending simultaneously in different federal courts."[41]  However, the rule is not to be "applied in a rigid or mechanical way."[42]  "[T]he existence of non-overlapping claims or parties does not disqualify lawsuits from the first-filed rule."[43]  Additionally, "where the two actions were

---

[38]      *See id*. ¶ 21.  The motions are currently *sub judice*.  *See* Memorandum of Law of AIDS Service Center NYC in Opposition to Defendant's Motion to Dismiss or in the Alternative to Transfer Venue ("ASCNYC Mem."), at 4.

[39]      *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (citations omitted).

[40]      *First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

[41]      *Sotheby's, Inc. v. Minor*, No. 08 Civ. 7964, 2009 WL 73134, at *1 (S.D.N.Y. Jan. 6, 2009).

[42]      *Cephalon, Inc. v. Travelers Cos., Inc.*, 935 F. Supp. 2d 609, 613 (S.D.N.Y. 2013) (quoting *Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009)).

[43]      *Liberty Mut. Ins. Co. v. Fairbanks Co.*, No. 13 Civ. 3755, 2014 WL 1796005, at *5 (S.D.N.Y. May 5, 2014).

filed within a short span of time, the court may afford a diminished degree of deference to the forum of the first filing."[44]  Application of the first-filed rule is also "diminished where there has been little progress in the first-filed action."[45] "The Second Circuit recognizes two circumstances that warrant departure from the first-filed rule: (1) where there are 'special circumstances,' and (2) where the 'balance of convenience' tilts in favor of the second forum."[46]

###    A.    Special Circumstances

"Special circumstances" include "manipulative or deceptive behavior" (such as where the first lawsuit is an improper anticipatory declaratory judgment action) or where "forum shopping alone motivated the choice of the situs for the first suit."[47]

###    1.    Anticipatory Action

"[I]n order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings

---

[44]     *Raytheon Co. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 352 (S.D.N.Y. 2004).

[45]     *See Pippins v. KPMG LLP*, No. 11 Civ. 377, 2011 WL 1143010, at * 4 (S.D.N.Y. Mar. 21, 2011).

[46]     *Id*. at *2 (citing *Employers Ins. of Wausau*, 522 F.3d at 275).

[47]     *Employers Ins. of Wausau*, 522 F.3d at 275-76 (internal quotation marks omitted).

as to deadlines and subsequent legal action."[48]  "'[A] declaratory judgment is considered anticipatory if filed in response to a demand letter specifically threatening litigation, but is not anticipatory where it is in response to a negotiating letter.'"[49] A notice letter which fails to inform the defendant of plaintiff's "intention to file suit, a filing date, and/or a specific forum for the filing of the suit"[50] is not sufficient to constitute an anticipatory filing.  However,

> "Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit.  Otherwise, potential plaintiffs would be discouraged from first attempting to resolve their claims without resorting to litigation."[51]

---

[48]    *Id.* at 276 (citations omitted).

[49]    *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12 Civ. 5105, 2013 WL 5355010, at *5 (S.D.N.Y. Sept. 25, 2013) (quoting *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 511 (S.D.N.Y. 2004)).

[50]    *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995).

[51]    *Revise Clothing, Inc. v. Levi Strauss & Co.*, No. 10 Civ. 5843, 2010 WL 4964099, at *3 (S.D.N.Y. Dec. 6, 2010) (quoting *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)).  *Accord Elbex Video, Ltd. v. Tecton, Ltd.*, No. 00 Civ. 673, 2000 WL 1708189, at *2 (S.D.N.Y. Nov. 15, 2000) (holding that despite Elbex expressing an interest in pre-litigation settlement, because it notified Tecton of potential infringement and indicated a desire to protect its rights, the first-filed suit was an "inappropriate filing resulting from an improper race to the courthouse").

### 2.    Forum Shopping

The Second Circuit has made clear that for forum shopping to justify a departure from the first-filed rule, "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first."[52]  Thus, to depart from the first-filed rule based on forum-shopping it is necessary that this "alone motivated that choice of the situs for the first suit."[53]  "A party who appropriately files suit in the forum most convenient to [it] to resolve a ripe legal dispute is not engaged in forum shopping."[54]

### B.    Balance of Convenience Factors

Even if no "special circumstances" exist, the court may still find that the balance of convenience weighs in favor of the second forum.[55]  The "balance of convenience" factors are "essentially the same as those considered in connection

---

[52]    *Employers Ins. of Wausau*, 522 F.3d at 276.

[53]    *Id*.

[54]    *Schnabel*, 322 F. Supp. 2d at 514.

[55]    *See Employers Ins. of Wausau*, 522 F.3d at 275.

with motions for transfer of venue pursuant to 28 U.S.C. § 1404(a)."[56]  "'Because the factors to be considered by the Court are substantially identical, a single analysis of the factors will resolve both issues.'"[57]  These factors include:

> "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties."[58]

The moving party must prove that the balance of convenience factors favors transfer, and "[t]he plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of transfer."[59]

## IV.   DISCUSSION

### A.   Application of First-Filed Rule

PharmBlue argues that because the Pennsylvania Action was filed first, the first-filed rule creates a presumption that the instant action should be

---

[56]   *Id*.

[57]   *Liberty Mut. Ins. Co.*, 2014 WL 1796005, at *7 (quoting *AIG Fin. Prods. Corp. v. Public Util. Dist. No. 1 of Snohomish Cnty., Wash.,* 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009)).

[58]   *Tomjai Enter., Corp. v. Laboratorie Pharmaplus USA, Inc.*, No. 12 Civ. 3729, 2012 WL 3104891, at *4 (S.D.N.Y. Jul. 31, 2012) (quoting *Employers Ins. of Wassau*, 522 F.3d at 275)).

[59]   *Liberty Mut. Ins. Co.*, 2014 WL 1796005, at *7.

dismissed.[60]  ASCNYC contends that because the two actions were filed only days apart and no progress had yet been made in the Pennsylvania Action, the presumption in favor of the first-filed action is diminished.[61]  The Pennsylvania Action was commenced on April 9, 2014 and the instant action was filed on April 17, 2014, five business days later.  This short lapse of time supports a finding of a diminished degree of deference to the first-filed action in Pennsylvania.[62] Moreover, there has not been significant progress in the Pennsylvania Action.[63]  On May 12, 2014, ASCNYC filed a motion to dismiss the Pennsylvania Action for lack of personal jurisdiction, or in the alternative, to transfer venue to this District. PharmBlue also filed a motion seeking to remand the Pennsylvania Action to the Allegheny Court of Common Pleas.  Both motions were fully briefed but remain *sub judice* and a status conference scheduled for June 2, 2014 was continued until further notice.  Because the Pennsylvania Action and the instant action were filed less than a week apart and the Pennsylvania Action has not progressed

---

[60]     *See* PharmBlue Mem. at 8.

[61]     *See* ASCNYC Mem. at 14.

[62]     *See Raytheon*, 306 F. Supp. 2d at 354 (holding that because the first-filed action was filed only two days before the second, the filing dates lacked significance and could be disregarded).

[63]     *See* Saltarelli Decl. ¶¶ 11-13.

14

significantly, the first-filed rule is entitled to less deference.

## B. PharmBlue's Filing of the Pennsylvania Action Was an Improper Anticipatory Filing

PharmBlue argues that there are no special circumstances which would justify giving priority to the instant action.[64]  ASCNYC contends that PharmBlue's filing of the Pennsylvania Action was an improper anticipatory action as it was done in response to ASCNYC's direct threat of litigation.[65]  ASCNYC argues that the March 14 and March 31, 2014 letters, in combination with the express statement of intention to file suit during the April 9, 2014 telephone conversation between counsel, constituted a specific threat of litigation.[66] ASCNYC's March 14 letter to PharmBlue expressed ASCNYC's intention to pursue claims "'for all damages [ASCNYC] has sustained as a result of PharmBlue's material breaches of its obligations and representations.'"[67] ASCNYC's March 31 letter also reserved its "'claim of damages or its right to seek rescission of the Agreement.'"[68]  Finally, while Saltarelli informed Wyrick in the

---

[64]     *See* PharmBlue Mem. at 9.

[65]     *See* ASCNYC Mem. at 7.

[66]     *See id*. at 9-10.

[67]     *Id*. at 9 (quoting 3/14/14 Saltarelli Letter at 2).

[68]     *Id*. (quoting 3/31/14 Saltarelli Letter at 4).

April 9, 2014 telephone call that ASCNYC preferred to terminate by mutual agreement, he also stated that ASCNYC was prepared to litigate if an agreement could not be reached.  At the conclusion of the conversation, Wyrick stated she would speak with her client, PharmBlue, and "get back to him."[69]  Rather than continuing the discussion, however, PharmBlue filed the Pennsylvania Action later the same day.  PharmBlue asserts that "the single precipitating factor" which caused it to file suit was its discovery of ASCNYC's contract with Town Total hours after the telephone conversation between counsel.[70]  ASCNYC contends that because it filed its registration of Town Total with HRSA on January 29, 2014, this publication had been accessible online for months prior to April 9, raising significant doubt as to the credibility of PharmBlue's explanation of its April 9 filing.[71]  While ASCNYC did not indicate a filing date or forum in which it would file its lawsuit, it did inform PharmBlue of its intention to file suit.[72]  While more than a general threat is required to find a declaratory action anticipatory,[73]

---

[69]     Saltarelli Decl. ¶ 6.

[70]     *See* PharmBlue Mem. at 11.

[71]     *See* ASCNYC Mem. at 9.

[72]     "[A] date and forum are not fixed prerequisites, but mere indicia of notice."  *See Cephalon,* 935 F. Supp. 2d at 615.

[73]     *See, e.g., Erickon Beamon Ltd.,* 2013 WL 5355010, at *4 (cease and desist letter stating that, "[s]hould you fail to comply with our request . . . our

ASCNYC should not be deprived of its right to litigate in a forum of its choice merely because PharmBlue engaged in a race to the courthouse and filed suit the same day in which it participated in active settlement discussions.[74] Not only did ASCNYC express its desire to amicably resolve the dispute after PharmBlue asked to avoid the "threat of litigation," but PharmBlue led ASCNYC to believe this was possible. Given the suspicious timing of PharmBlue's filing of the Pennsylvania Action, I find that the Pennsylvania Action was an improper anticipatory action. This anticipatory filing overcomes the presumption in favor of the first-filed forum.

### B. Balance of Convenience Factors

In weighing the totality of the convenience factors, I also conclude that the Southern District of New York is the appropriate forum for this case.

### 1. Plaintiff's Choice of Forum

"The Second Circuit has consistently held that 'a plaintiff's choice of

---

client is prepared to utilize all legal avenues available to ensure that all such unauthorized use ceases and that our client is fairly compensated for such past unauthorized use," was a general threat that did not rise to the level of special circumstances).

[74] *See Elbex,* 2000 WL 1708189, at *2.

17

forum is presumptively entitled to substantial deference.'"[75]  "'However, the emphasis placed by a court on this choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum.'"[76]  While generally PharmBlue's choice of filing in Pennsylvania, its principal place of business, would be given substantial deference, PharmBlue has not established any significant events that occurred in Pennsylvania.  As discussed below, the operative facts underlying this action took place in New York and have little, if any, connection to the Western District of Pennsylvania.[77]  Thus, PharmBlue's choice of forum is accorded little or no deference and this factor does favor a transfer.

### 2.      Convenience of Witnesses and Ability to Compel Attendance

"When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number

---

[75]      *AIG Fin. Prods. Corp.*, 675 F. Supp. 2d at 368 (citing *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004)).

[76]      *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 843 (S.D.N.Y. 2012) (quoting *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 368 (S.D.N.Y. 2009)).

[77]      *See, e.g., Tomjai Enters., Corp.*, 2012 WL 3104891, at *5.

of witnesses in each district."[78]  Thus, a party seeking transfer must "'clearly

specify the key witnesses to be called and must make a general statement of what

their testimony will cover.'"[79]  Here, PharmBlue does not identify any witnesses,

non-party or otherwise, that could be compelled to testify in Pennsylvania but not

in New York.  In contrast, ASCNYC has identified non-party witnesses who are

likely to testify including, "ASCNYC clients who reside in New York City, New

York Medicaid department government officials, and New York Presbyterian

Hospital physicians."[80]  ASCNYC lists three physicians, who work and reside in

New York, who are likely to testify "regarding their dealings with PharmBlue and

its inability to bill Managed Medicaid in connection with prescriptions for

ASCNYC's Medicaid-eligible clients."[81]  Because Pennsylvania is over one

hundred miles from New York City, these New York based witnesses could not be

compelled to testify in either the Pennsylvania Action, or the Court of Common

---

[78]    *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 404 (S.D.N.Y. 2005) (citation omitted).

[79]    *Liberty Mut. Ins. Co.*, 2014 WL 1796005, at *8 (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) (citations omitted), *overruled on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)).

[80]    ASCNYC Mem. at 22 (citing Duke Decl. ¶ 23).

[81]    Duke Decl. ¶ 23.

Pleas if remanded.[82]   Therefore, this factor weighs against transfer.

### 3.   Location of Documents and Relative Ease of Access to Sources of Proof

"The location of relevant documents[,] is a neutral factor in today's world of electronic communication and overnight shipping."[83]   PharmBlue's documents are located in Pennsylvania.   However, ASCNYC's and Town Total's documents are both maintained in New York.   ASCNYC identifies numerous relevant documents located in New York, including ASCNYC's clients' prescription records, records of New York Presbyterian Hospital, New York Medicaid records, and records from the Brooklyn-based pharmacy acquired by PharmBlue.   While generally the location of documents would be a neutral factor, it does appear that transferring this action would impose a slight burden on ASCNYC.   Therefore this factor weighs against transfer.

### 4.   The Convenience of the Parties

"[T]he parties' convenience becomes a neutral factor in the transfer analysis if transferring venue would merely shift the inconvenience to the other party."[84]   Two of ASCNYC's senior personnel, who are expected to testify, reside

---

[82]   *See* Fed. R. Civ. P. 45(c).

[83]   *Pippins*, 2011 WL 1143010, at *5.

[84]   *AIG*, 675 F. Supp. 2d at 370 (citation omitted).

in New York City and New Jersey.  ASCNYC maintains its headquarters and only offices in New York City.  While PharmBlue has its principal place of business in Pennsylvania, its senior officers regularly travel to New York for business. Additionally, Town Total, also resides in and is licensed in New York.  This factor weighs against transfer.

### 5.    Relative Means of the Parties

"The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties."[85]  PharmBlue alleges that ASCNYC "has significant resources to litigate in either Pennsylvania or New York, regardless of its status as a non-profit."[86] ASCNYC, by contrast, has submitted information demonstrating that it operates on "limited governmental funding and private charitable donations" and is currently represented on a pro-bono basis.[87]  PharmBlue has not submitted any evidence of its own financial means.  This factor thus tilts slightly in favor of New York as the most convenient forum.

### 6.    The Locus of Operative Facts

---

[85]    *Herbert Ltd. P'ship v. Electronic Arts Inc.*, 325 F. Supp. 2d 282, 290 (S.D.N.Y. 2004).

[86]    PharmBlue Mem. at 14.

[87]    ASCNYC Mem. at 23.

21

"In an action arising out of a breach of contract, the location of the operative facts is 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'"[88]  Here, the Agreement was negotiated and executed in New York.  The alleged breach is based on PharmBlue's obligation to deliver pharmacy services to ASCNYC's Medicaid-eligible clients who primarily reside in New York.  Moreover, PharmBlue claims that any breach was cured by its acquisition of a Brooklyn-based pharmacy.  Because the majority of the operative facts occurred in New York, this factor weighs against transfer.

### 7.    Forum's Familiarity with Governing Law

Because federal courts are deemed capable of applying the substantive law of other states, the forum's familiarity with the governing law is typically "'to be accorded little weight on a motion to transfer venue.'"[89]  "However, while 'federal courts in other states are capable of construing New York law, especially in a straightforward contract question, the forum's familiarity with the governing

---

[88]    *Mohnsen v. Morgan Stanley & Co., Inc.*, No. 11 Civ. 6751, 2013 WL 5312525, at *6 (S.D.N.Y. Sept. 23, 2013) (quoting *ACGS Marine Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 648 (S.D.N.Y. 2011)).

[89]    *Liberty Mut. Ins. Co.*, 2014 WL 1796005, at *10 (quoting *Astor Holdings, Inc. v. Roski*, No. 01 Civ. 1905, 2002 WL 72936, at *13 (S.D.N.Y. Jul. 17, 2002) (citation omitted)).

law may be a factor even in contract cases.'"[90]   Here, the Agreement at the center of the dispute has a New York choice-of-law clause.  The parties agree that the substantive question in the action is whether the Agreement required PharmBlue to be qualified to bill New York Medicaid for ASCNYC's Medicaid-eligible clients. It does not appear that this action implicates any complex or novel questions of state law.  Accordingly, this factor weighs against transfer, although only slightly.

### 8.   Interests of Justice

PharmBlue argues that it would be more convenient to proceed with a single action in Pennsylvania, where Town Total is also a party, than to litigate two separate actions in two separate jurisdictions.[91]   One factor to be considered in whether a transfer is warranted in the interest of justice is "'when two cases involving the same issues are simultaneously pending in different district courts.'"[92]   "'However, where suits are filed in quick succession and/or the court with the first filed action has done little with respect to it, the rule carries less

---

[90]   *Mastr Asset Backed Secs. Trust 2007-WMCI, ex rel. U.S. Bank Nat. Ass'n WMC Mortg. LLC*, 880 F. Supp. 2d 418, 423 (S.D.N.Y. 2012) (quoting *AIG*, 675 F. Supp. 2d at 372) (citations and quotations omitted)).

[91]   *See* PharmBlue Mem. at 13.

[92]   *Mastr*, 880 F. Supp. 2d at 424 (quoting *Barnet v. Elan Corp.*, 236 F.R.D. 154, 164 (S.D.N.Y. 2005) (citations omitted)).

23

weight.'"[93]  Here, the instant action was filed only five business days after the Pennsylvania Action.  Given that the Pennsylvania Action has not progressed significantly, the interest of justice would not be greatly served by transferring this action.  Moreover, the majority of the relevant considerations indicate that a transfer of venue would be inappropriate in this case.  The convenience of witnesses, the forum's ability to compel attendance of witnesses, the location of relevant documents, the convenience and relative means of the parties, the locus of operative facts, and this Court's relatively greater familiarity with New York law, all weigh against transfer.  Thus Pennsylvania's interest in the action is minimal and the interests of justice weigh in favor of retaining the case in the Southern District of New York.

## V.    ABSTENTION

At the time PharmBlue's instant motion was filed, there was a pending motion in the Pennsylvania Action to remand that case to state court.  As an alternative to its motion to dismiss or transfer, PharmBlue has moved this Court to dismiss this action pursuant to the abstention principles set forth in *Colorado*

---

[93]     *AIG*, 675 F. Supp. 2d at 372-73 (quoting *American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 489 (S.D.N.Y. 2007)).

*River Water Conservation District v. United States.*[94]  However, as the motion to remand is currently *sub judice*, a ruling on PharmBlue's motion for abstention is premature.

## VI.    CONCLUSION

For the foregoing reasons, PharmBlue's motion to dismiss or in the alternative to transfer venue is DENIED in its entirety.  The Clerk of the Court is directed to close this motion [Doc. No. 11].  A conference is scheduled for August 15, 2014 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 30, 2014

---

[94]    424 U.S. 800 (1976).

**- Appearances -**

**For Plaintiff:**

Joseph John Saltarelli, Esq.
Patrick L. Robson, Esq.
Hunton & Williams, LLP (NYC)
200 Park Avenue, 52nd Floor
New York, NY 10166
(212) 309-1100

**For Defendant:**

Casey Devin Laffey, Esq.
Reed Smith, LLP (NYC)
599 Lexington Avenue
New York, NY 10022
(212) 549-0389

Dianna Calaboyias Wyrick, Esq.
Reed Smith, LLP (Pittsburgh)
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-7238